UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


UNITED STATES OF AMERICA                    CRIMINAL ACTION


VERSUS                                                      NO: 14-76


TORREY LEDELL DAVIS                           SECTION: R

## ORDER AND REASONS

The defendant, Torrey Davis, moves the Court for an evidentiary hearing and to suppress evidence obtained through execution of a warrant to search a residence.  For the following reasons, the Court DENIES the defendant's motion.


## I.   BACKGROUND

Torrey Davis was indicted for conspiracy to commit sex trafficking of a child, sex trafficking of a child, and interstate transportation of a minor for the purpose of engaging in criminal sexual activity.[1]  Specifically, the Government alleges that on November 26, 2012, Davis drove a 16 year-old victim, JV, from Jackson, Mississippi to his residence in Metairie, Louisiana for the purpose of

---

[1] R. Doc. 16.

training her to work as a prostitute.[2]  Davis allegedly explained to JV how to perform sex work and paired her with a person who had worked for him as a prostitute for additional training.[3]  The Government further alleges that Davis took sexually suggestive photographs of JV and that his laptop computer was used to create an online prostitution advertisement featuring her picture.[4]  Davis also allegedly gave JV a cellular phone and instructed another person to drive JV to the New Orleans French Quarter to work as a prostitute.[5]

On December 13, 2012, the Government applied for a warrant to search a residence on Bonnabel Boulevard in Metairie for evidence of Davis's alleged crimes.[6]  Specifically, the Government sought items relating to prostitution and to the production of online prostitution advertisements, including computers, iPads, memory drives, cellular phones and phone records, books, financial records, and similar things.[7]  In support of the warrant application, the Government submitted a ten-page sworn affidavit by FBI Special Agent

---

[2] *Id.* at 3.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] R. Doc. 46-3.

[7] *Id.* at 8-9.

Jennifer Terry.[8]   After reviewing the application, Magistrate Judge Sally Shushan approved and signed the warrant.

Davis now moves the Court for an evidentiary hearing and to suppress the evidence gathered in the search of the Bonnabel residence.[9] Davis argues that Special Agent Terry made a false statement in the affidavit that was crucial to the Magistrate Judge's probable cause determination.   Davis contends that in the absence of the misrepresentation, the affidavit is insufficient to establish probable cause of criminal conduct.  Davis also argues that the facts supporting the warrant application were stale by the time the warrant was issued.

## II.    DISCUSSION

### A.    Misrepresentation of Fact

#### 1.    *Franks v. Delaware*

Davis contends that the affidavit supporting the Government's search warrant application contained a false statement that negates probable cause. Davis argues that he is entitled to an evidentiary hearing under *Franks v.*

---

[8] *Id.* at 14-23.

[9] R. Doc. 46-1.

*Delaware*, 438 U.S. 154 (1978), and that the evidence seized during the search of the Bonnabel residence must be suppressed.

In *Franks*, the Supreme Court held that criminal defendants have a limited right, under the Fourth and Fourteenth Amendments, to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. 438 U.S. at 155-56. The *Franks* rule is of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167. Significantly, under *Franks*, the affidavit supporting a search warrant is presumptively valid. *Id.* at 171. Therefore, in order to receive an evidentiary hearing on suppression, a defendant who attacks the validity of such an affidavit must make a "substantial preliminary showing" that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *Id.* at 171; *see also, United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996).

The Supreme Court elaborated on the meaning of a "substantial preliminary showing" in some detail:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of

4

> deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72. The "substantial preliminary showing" requirement is not lightly met. *See U.S. v. Cleveland*, 964 F.Supp. 1073, 1077 (E.D.La.1997).

Recognizing that it will often be difficult to prove that an officer made a misrepresentation intentionally or with reckless disregard for the truth, the Fifth Circuit has held that a court may infer recklessness if the materiality of the officer's misrepresentation is sufficiently great. *United States v. Namer*, 680 F.2d 1088, 1094 (5th Cir. 1982); *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980). "In such cases, the analytical concepts of materiality and recklessness are 'bound together,' collapsing the dual inquiry of *Franks* into a single inquiry into materiality." *Cleveland*, 964 F. Supp. at 1078 (citing *Namer*, 680 F.2d at 1094). Nonetheless, reckless intent is to be inferred only

in extreme cases, when the misrepresentation is "crucially material" to the probable cause determination.  *Namer*, 680 F.2d at 1094.

### 2. *Special Agent Terry's Affidavit*

In her affidavit, Special Agent Terry stated that on November 26, 2012, the New Orleans Police Department informed her that a 16-year old juvenile was arrested in the New Orleans French Quarter for prostitution.[10]  The juvenile, JV, and an adult woman had arranged for JV to perform oral sex on an undercover detective for $500.[11]  After her arrest, JV told officers that she was 16 years of age and that she was from Jackson, Mississippi.[12]  JV was then transferred to the Orleans Parish Juvenile Detention Center, where she was held as a runaway and booked for prostitution and a curfew violation.[13]

The following day, November 27, Special Agent Terry and another FBI Special Agent interviewed JV at the Juvenile Detention Center.[14]  According to Special Agent Terry's affidavit, JV stated that she had arrived in the New Orleans area on the morning of November 26 and that she had been with a

---

[10] R. Doc. 46-3 at 16.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

6

friend at a house in Metairie, Louisiana.[15]  JV described the house as a red brick townhouse that was located on a main road near Causeway and I-10.[16] At the house, JV met "Bunny," the woman with whom she had been arrested the night before.[17]  "Bunny" asked JV if she wanted to go to New Orleans to "do some tricking" and then picked out clothing for JV to wear.[18]  Before JV left the house, a man who was introduced as "Daddy" (later identified as Davis) and another man gave JV money and a cellular phone.[19]  The phone's contact list contained an entry for "Daddy," with the phone number (225) 276-3888--a number that, as authorities later learned, belonged to an account in Davis's name.[20]

While JV was at the house with Davis and "Bunny," "Bunny" asked JV to pose for photographs wearing a sheer shirt, a red brasserie, and short pink shorts that "Bunny" had picked out.[21]  "Bunny" gave instruction on how to pose

---

[15] *Id.*

[16] *Id.* at 17.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

and photographed JV using "Bunny's" iPad.[22]   A short time later, an advertisement was posted on the website Escortsincollege.com, featuring photographs of JV wearing the same shirt, brasserie, and shorts.[23]   The advertisement offered escort services and listed the number for the phone that had been given to JV as a contact number.[24]   According to Special Agent Terry's affidavit, JV said that she did not post the online advertisement and had been unaware of its existence.[25]

On the evening of November 26, "Bunny" drove JV from the house in Metairie to the New Orleans French Quarter.[26]   During the drive, "Bunny" explained how to perform as an escort, offered to split proceeds with JV, and said that if JV made money as an escort, "Bunny" could buy her expensive clothing and a car.[27] Upon their arrival in the French Quarter, "Bunny" and JV offered for JV to perform oral sex on an undercover police officer, and both "Bunny" and JV were arrested.[28]

---

[22] *Id.*

[23] *Id.* at 17-18.

[24] *Id.* at 18.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

On November 30, 2012, law enforcement officers conducted surveillance on "Bunny" as she left the Orleans Parish Courthouse.[29]  "Bunny" drove from the courthouse to the residence on Bonnabel Boulevard.[30]  A blue-gray Mazda sedan with Louisiana plates was parked in front of the residence.[31]  According to Special Agent Terry's affidavit, the Bonnabel residence is a red brick townhouse complex consisting of three units, which closely matches JV's description of the house where JV met "Bunny" and Davis.[32]  In addition, the residence is located on a major thoroughfare near I-10 and Causeway, as JV had described.   On December 4, officers conducted surveillance at the Bonnabel residence and again saw the blue-grey Mazda in the parking area.[33]  A US Postal Inspector told investigators that "Bunny" received mail at the Bonnabel residence.[34]  And a records inquiry revealed that the current account for electricity service at the address was in Davis's name.[35]

---

[29] *Id.* at 20.

[30] *Id.*

[31] *Id.*

[32] *Id.* at 21.

[33] *Id.*

[34] *Id.*

[35] *Id.*

Special Agent Terry and Louisiana State Police officers interviewed JV and JV's mother on December 12.[36]   During that interview, JV gave a description of the house in which she had met "Bunny" and Davis that closely matched the Bonnabel residence.[37]   When she was shown photographs, JV positively identified the Bonnabel residence as that location.[38]   JV was then shown photographs of the blue-grey Mazda parked in front of the Bonnabel residence, which she identified as the car in which "Bunny" had driven her to the French Quarter.[39]   Importantly for purposes of this order, the affidavit also states that during the December 12 interview, "JV further advised that she believed ["Bunny"] and Davis were aware that she was under the age of 18 during the events described herein."[40]

Ultimately, Special Agent Terry concluded that there was probable cause that both "Bunny" and Davis had committed violations of 18 U.S.C. §§ 1591, 2422, and 2252(A)(g) and that evidence could be found at the Bonnabel

---

[36] *Id.*

[37] *Id.* at 22.

[38] *Id.* at 22.

[39] *Id.*

[40] *Id.*

residence.[41] On the basis of the information contained in Special Agent Terry's affidavit, Magistrate Judge Shushan approved a warrant to search the Bonnabel residence for items related to prostitution and to the production of online prostitution advertisements.

Of the statements contained in Special Agent Terry's affidavit, Davis takes issue with only one. Davis argues that Special Agent Terry's statement that "JV further advised that she believed ["Bunny"] and Davis were aware that she was under the age of 18 during the events described herein" was false. Davis notes that the FBI 302 report documenting the December 12 interview contains no indication that JV made a statement concerning whether Davis or "Bunny" were aware of her age.[42] Davis argues that because JV's supposed statement was the only indication that Davis or "Bunny" knew that JV was a minor, Agent Terry's misrepresentation was critical to the Magistrate Judge's finding of probable cause.

            3.    *Analysis*

In asserting that Special Agent Terry made the alleged misstatement in issue, Davis has supplied no direct evidence that Special Agent Terry made the

---

[41] *Id.* at 22-23.

[42] R. Doc. 46-1 at 4. Upon review of the FBI 302, the Court finds that the report contains only one direct reference to JV making a statement about her age. According to the report, "[JV] told 'Twon' she was only 16 years old." R. Doc. 46-4 at 1.

statement with the intent to mislead the Magistrate Judge or with reckless disregard for the truth. Davis is nonetheless entitled to an evidentiary hearing if he can show that the misstatement was "crucially material" to the Magistrate Judge's probable cause determination. *Namer*, 680 F.2d at 1094.

To support a finding of probable cause to issue a search warrant, an affiant must show "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983). The affidavit must also provide the court "with sufficient reliable information from which [it] could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched." *United States v. McKinney*, 758 F.2d 1036, 1042 (5th Cir. 1985) (quoting *United States v. Marbury*, 732 F.2d 390, 395 (5th Cir. 1984)). In determining whether probable cause exists, a court considers the totality of the circumstances. *United States v. Dickey*, 102 F.3d 157, 162 (5th Cir. 1996).

Here, the alleged misrepresentation does not undermine the Magistrate Judge's probable cause determination. Among the crimes alleged in the search warrant application was a violation of 18 U.S.C. § 1591, which criminalizes causing a person under the age of 18 to engage in a commercial sex act. A conviction under 18 U.S.C. § 1591 generally requires proof, *inter alia*, that the defendant acted "knowing, or in reckless disregard of the fact . . . that the

12

person has not yet attained the age of 18 years . . . ." 18 U.S.C. § 1591(a).  But Section 1591(c) of the statute further provides: "In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c) (2012) (current version at 18 U.S.C. § 1591(c)).[43]  Taken together, these provisions give the Government "three distinct options" for obtaining a conviction under 18 U.S.C. § 1591. *United States v. Robinson*, 702 F.3d 22, 32 (2d Cir. 2012).  It may "prove beyond a reasonable doubt that: (1) the defendant had knowledge of the victim's underage status; (2) that the defendant recklessly disregarded that fact; or (3) that the defendant had a reasonable opportunity to observe the victim." *Id.*

Davis argues that because JV's statement of her belief that Davis was aware of her age is the only evidence in the affidavit that he knew (or recklessly disregarded the fact) that JV was a minor, the statement had to be crucial to the Magistrate Judge's probable cause determination.   But neither actual

---

[43] Recently, 18 U.S.C. § 1591(c) underwent a slight revision.  The statute now states: "In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years."  This revision came into effect after the issuance of the search warrant at issue here.  Thus, the applicable statutory provision for purposes of this order is the prior version of § 1591(c).

knowledge nor reckless disregard is required under 18 U.S.C. § 1591.  As Davis himself acknowledges in a footnote,[44] conviction for sex trafficking of a child can instead be based on evidence that the defendant had "a reasonable opportunity to observe" the minor victim.  18 U.S.C. § 1591(c) (2012) (current version at 18 U.S.C. § 1591(c)).  Hence, to establish probable cause, Special Agent Terry's affidavit need only have established a probability or substantial chance that Davis had a reasonable opportunity to observe JV during the events described.

The information contained in Special Agent Terry's affidavit is sufficient to support such a finding.  According to the affidavit, Davis encountered JV at the Bonnabel residence before JV's November 26 arrest.[45]  During that meeting, Davis was introduced as "Daddy," and he and another man handed JV money and a cellular telephone.[46]  Davis was therefore in close proximity to JV for an appreciable period of time--long enough, at least, to exchange introductions and physically hand JV multiple items.  It is reasonable to infer that Davis had a sufficient opportunity to observe JV during this introductory

---

[44] R. Doc. 46-1 at 4 n.2 (noting that a finding that Davis "had a reasonable opportunity to observe JV . . . would also satisfy the knowledge requirement under the statute").

[45] *Id.* at 17.

[46] *Id.*

encounter.  Davis was also present in the house when "Bunny" picked out clothing for JV, instructed her on suggestive poses, and photographed JV in revealing attire.[47]  While the affidavit does not state that Davis participated in the photo shoot, it could be inferred from Davis's presence that the shoot gave him yet another opportunity to view JV's physical attributes, as well as her actions and demeanor.  Standing alone, either of these representations in Special Agent Terry's affidavit could support a finding that Davis had a reasonable opportunity to observe JV.  Taken together, they are clearly sufficient to support a finding of probable cause under 18 U.S.C. § 1591.

Davis resists this conclusion by arguing that the affidavit does not directly assert that Davis had a reasonable opportunity to observe JV.[48]  This argument fails because a court's probable cause determination is not based on an officer's legal conclusions but, rather, on the allegations of fact that support those conclusions.  *See Gates*, 462 U.S. at 276 (concluding that because a magistrate judge is an independent arbiter of probable cause, officers must support their search warrant applications with the underlying facts and circumstances that support their conclusions).  Here, the facts and circumstances alleged in Special Agent Terry's affidavit indicate that Davis had

---

[47] *Id.*

[48] R. Doc. 46-1 at 4 n.2

15

a reasonable opportunity to observe JV during their time together at the Bonnabel residence.  Thus, even if JV's statement about "Bunny" and Davis's awareness of her minor status were removed from the affidavit, probable cause would still exist.   Davis has therefore failed to make the "substantial preliminary showing" required to obtain a *Franks* evidentiary hearing.[49]

### B.    Staleness of the Search Warrant

Davis also argues that the information contained in Special Agent Terry's affidavit was too stale to support a finding of probable cause that evidence would be located at the Bonnabel residence, because over two weeks passed between the events of November 26 and the issuance of the search warrant. Davis argues that the passage of time is particularly problematic given that Davis remained at large during this time period.

"Probable cause must be found to exist at the time the warrant issues." *United States v. Hyde*, 574 F.2d 856, 864 (5th Cir. 1978).  If the facts alleged in the affidavit are so dated that no reasonable police officer could believe that

---

[49] Because Special Agent Terry's affidavit establishes the probability of criminal activity under 18 U.S.C. § 1591, the Court need not address Davis's arguments concerning the existence of probable cause for the other crimes alleged in the affidavit. As noted, a search warrant applicant need only demonstrate probable cause that a crime has been committed and that evidence of the crime can probably be found at the location to be searched.  *McKinney*, 758 F.2d at 1042.  Davis does not challenge the nexus between the alleged criminal conduct and the Bonnabel residence.  Therefore, the Court's finding that probable cause existed for the crime of sex trafficking of children is dispositive of Davis's challenge to the affidavit on which the search warrant was based.

probable cause exists, then the issuance of a search warrant violates the Fourth Amendment. *United States v. Kleinkauf*, 487 F. App'x 836, 838-39 (5th Cir. 2012). "When evaluating the staleness of information in an affidavit, this Court considers the particular facts of the case, including the nature of the unlawful activity and of the evidence sought, especially whether the evidence is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (quoting *United States v. Craig*, 861 F.2d 818, 822–23 (5th Cir. 1988)).

Here, only two weeks passed between the events in question and the warrant to search the Bonnabel residence. Davis cites no authority for the proposition that a warrant goes stale after such a short passage of time. Indeed, the Court notes that in cases involving child exploitation and computer files, courts have found information that is much older sufficiently fresh to support the allegations in a search warrant application. *See e.g.*, *Kleinkauf*, 487 F. App'x at 839 (holding that a nine-month delay between defendant's subscription to a child pornography website and affidavit supporting search warrant did not render the information stale). Moreover, the warrant application at issue here sought authority to seize items such as computers, iPads, memory drives, cellular phones and phone records, books,

financial records, and other similar things.  Items of this nature have enduring utility and can reasonably be expected to be kept at one's residence for more than two weeks.[50]  *See United States v. Streetman*, 207 Fed.Appx. 414, 416 (5th Cir. 2006) ("At least one circuit has found that computer files are of a type that could be expected to be kept for long periods of time in the place to be searched.");  *United States v. Freeman*, 685 F.2d 942, 952 (5th Cir. 1982) (noting that passports, identification papers, and bank records are likely to be held at one's residence and kept there for long periods of time).  Thus, a reasonable officer could conclude that the evidence sought would still be in the Bonnabel residence two weeks after the alleged crime took place.  The Court therefore concludes that this passage of time did not render the facts supporting the search warrant stale.

---

[50] The facts adduced in Special Agent Terry's affidavit indicated that the Bonnabel residence was either Davis's own residence or a place where Davis spent significant amounts of time.  Specifically, Davis was seen at the residence by JV, and a records search indicated that utilities for the property were in Davis's name.  R. Doc. R. Doc. 46-1 at 21.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES the defendant's motion.


New Orleans, Louisiana, this <u>19th</u> day of October, 2015.


_____
        SARAH S. VANCE
UNITED STATES DISTRICT JUDGE